UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON RIDGE PARTNERS,

       Petitioner,

vs.                                                                    Case No.:8:06-cv-1340-T-24MAP

UNITED STATES OF AMERICA,

       Respondent.

_____/

## ORDER

This cause comes before the Court on Brandon Ridge Partners' Motion for Summary

Judgment (Doc. No. 21), which the United States opposes (Doc. No. 37).  Both parties have filed

reply briefs.  (Doc. No. 41, 43, 44, 45).

## I.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears

the initial burden of showing the Court, by reference to materials on file, that there are no

genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477

U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by

"showing" or "pointing out" to the Court that there is an absence of evidence to support the non-

moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with

or without supporting affidavits and to move for summary judgment on the case as a whole or on

any claim.  See id.  When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  Background

This case involves Brandon Ridge Partners' petition for readjustment of partnership items under 26 U.S.C. § 6226.  Specifically, Brandon Ridge Partners challenges a Notice of Final Partnership Administrative Adjustment ("FPAA") that the Internal Revenue Service ("IRS") issued on February 22, 2006 regarding Brandon Ridge Partners' tax year ending December 31, 1998.

Nelson Jefferson was a majority shareholder in Florida Electronic Supply, Inc. ("FES"), an S-corporation.  In 1998, Mr. Jefferson decided to sell his FES stock, which had a relatively

low basis.  According to the IRS, in order to reduce the taxable gain on the sale of the FES stock, Nelson Jefferson and his wife at the time, Carolyn Jefferson[1], engaged in the following transactions that occurred over a sixteen day period.

On November 18, 1998, NJ Investments, LLC was formed and was wholly-owned by Mr. Jefferson.  (Dale decl.[2], Ex. 5, p. JG 262-263; Doc. No. 21, p. 3).  Also on November 18, 1998, Brandon Ridge Partners was formed, with Mr. Jefferson having a 99% interest and Mrs. Jefferson having a 1% interest.  (Dale decl., Ex. 5, p. JG 274-285).  On November 19, 1998, Brandon Ridge, Inc., an S-corporation, was formed, and it was wholly-owned by Mr. Jefferson. (Dale decl., Ex. 5, p. JG 266).

On November 24, 1998, Mr. Jefferson, acting through NJ Investments, engaged in a short sale of Treasury Notes (i.e., NJ Investments borrowed the Treasury Notes and sold them to a third party).  (Doc. No. 1, ¶ 22).  When one engages in a short sale, there is a corresponding obligation following the sale to replace the borrowed security.  Typically, this is done by purchasing the security on the open market at some later date and transferring it to the lending party.  NJ Investments sold the borrowed Treasury Notes for $3,258,458.33.  (Dale decl., Ex. 6, p. 471).

On November 25, 1998, NJ Investments transferred both the $3,258,458.33 in proceeds from the short sale and the obligation to cover the short sale (i.e., the obligation to purchase and replace the borrowed Treasury Notes) to Brandon Ridge Partners.  (Dale decl, Ex. 6, p. 419).  On

---

[1]The Jeffersons divorced in 2004, and Carolyn Jefferson is now known as Carolyn Miles. However, throughout this Order, when referring to them collectively, they will be referred to as "the Jeffersons."

[2]Doc. No. 37

November 27, 1998, Brandon Ridge Partners covered the short sale.  (Dale decl., Ex. 6, p. 470).

On December 2, 1998, Mr. Jefferson contributed his FES stock to Brandon Ridge Partners as a capital contribution.  (Doc. No. 1, ¶ 25).  On December 3, 1998, the Jeffersons contributed 99% of their interest in Brandon Ridge Partners to Brandon Ridge, Inc.[3]  (Doc. No. 1, ¶ 4, 26).  As such, by December 3, 1998, Brandon Ridge, Inc. held a 99% interest in Brandon Ridge Partners, which in turn held the FES stock.  Both Brandon Ridge Partners and Brandon Ridge, Inc. were controlled by the Jeffersons.

The Jeffersons' transfer of 99% of their interest in Brandon Ridge Partners to Brandon Ridge, Inc. caused a technical termination of Brandon Ridge Partners on December 2, 1998, pursuant to U.S.C. § 708.[4]  On December 3, 1998, the "new" Brandon Ridge Partners made an election pursuant to 26 U.S.C. § 754,[5] which purported to increase Brandon Ridge Partners' basis in the FES stock by $3,258,458.33 in an attempt to reduce the gain on the future sale of the FES stock.  On December 4, 1998, Brandon Ridge Partners sold the FES stock for $3,315,000 to an unrelated third-party.  (Doc. No. 1, ¶ 27).  Due to the purported increase in the basis of the FES stock by the $3,258,458.33 adjustment, the gain on the sale of the FES stock was limited to $31,042.  If Brandon Ridge Partners had sold the FES stock without taking the position that the

---

[3]Mr. Jefferson retained a 1% interest in Brandon Ridge Partners.  (Doc. No. 1, ¶ 26).

[4]Section 708(b)(1)(B) provides that if there is a sale or exchange of 50% or more of the total interest in partnership capital and profits within a twelve month period, the partnership is considered terminated.

[5]Section 754 provides: "If a partnership files an election, . . . the basis of partnership property shall be adjusted, . . . in the case of a transfer of a partnership interest, in the manner provided in section 743."  Section 743(b) provides: In the case of a transfer of an interest in a partnership in which a section 754 election is made, the partnership shall "increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property."

basis of the FES stock was increased by these transactions, the IRS contends that the gain on the sale of the FES stock would have been $3,289,500.

On September 13, 1999, Brandon Ridge Partners filed its Form 1065 Partnership Return for the tax year ending December 31, 1998.  (Doc. No. 1, ¶ 5).  The IRS received the Jeffersons' Form 1040 Individual Tax Return for the 1998 tax year on October 5, 1999.  (Doc. No. 24).  On February 22, 2006, the IRS issued the FPAA at issue in this case.  (Doc. No. 1, Ex. A).

In the FPAA, the IRS took the position that the transactions described above lacked economic substance.  In order to understand the transactions and their effect in this case, one must understand the partnership-tax concepts of "inside basis" and "outside basis":

> Inside basis is a partnership's basis in the property which it owns. For contributed property, the inside basis is initially equal to the contributing partner's adjusted basis in the property. Sec. 723. Outside basis is an individual partner's basis in his interest in the partnership itself. When a partner contributes both cash and property to a partnership, his outside basis is initially equal to the amount of cash plus his adjusted basis in the contributed property. Sec. 722; sec. 1.722-1, *Example* ( *1* ), Income Tax Regs. Outside basis increases when a partner contributes additional assets to the partnership or when the partnership has a gain; it decreases when the partner contributes liabilities to the partnership, the partnership has a loss, or the partnership distributes assets to the partner. Sec. 705(a).

Kligfeld Holdings v. C.I.R., 2007 WL 1556083, at *2 (U.S. Tax Ct. May 30, 2007).

When the $3,258,458.33 proceeds from the short sale were contributed to Brandon Ridge Partners, the Jeffersons' outside basis in Brandon Ridge Partners increased by the amount of the proceeds contributed.  However, since the obligation to cover the short sale was also contributed to Brandon Ridge Partners, the IRS contends that the Jeffersons should have decreased their outside basis in Brandon Ridge Partners by the value of the obligation to cover the short sale, because a partner's outside basis decreases when the partner contributes liabilities to the partnership.  Thus, according to the IRS, the Jeffersons' outside basis in Brandon Ridge Partners,

which purported to be $3,258,458.33, was overstated.

When Mr. Jefferson contributed his FES stock to Brandon Ridge Partners, the partnership took Mr. Jefferson's low basis in the FES stock.  Thus, Brandon Ridge Partners' inside basis in the FES stock was the same as Mr. Jefferson's basis in the FES stock before he contributed it to Brandon Ridge Partners.

When the Jeffersons transferred their interests in Brandon Ridge Partners to Brandon Ridge, Inc., the corporation's outside basis in the partnership equaled the Jeffersons' outside basis in the partnership before the transfer of their interests to the corporation, which purported to be $3,258,458.33.  According to the IRS, since the Jeffersons' outside basis in Brandon Ridge Partners was overstated (due to their failing to decrease their outside basis by the value of the obligation to cover the short sale that was assumed by the partnership), Brandon Ridge, Inc.'s outside basis in the partnership, which was carried over from the Jeffersons, was overstated.  As such, Brandon Ridge Inc.'s outside basis in Brandon Ridge Partners purportedly was $3,258,458.33.

When Brandon Ridge Partners made its § 754 election, the effect was that, pursuant to 26 U.S.C. § 743, the partnership's inside basis in its assets (which consisted of the FES stock) was increased to reflect Brandon Ridge, Inc.'s much higher outside basis in the partnership.  As such, Brandon Ridge Partners' inside basis in the FES stock was increased by $3,258,458.33 to reflect Brandon Ridge, Inc.'s purported $3,258,458.33 outside basis in the partnership.

The end result of these transactions was that the Jeffersons significantly increased the basis of the FES stock.  Therefore, when Brandon Ridge Partners sold the FES stock, the purported gain on the sale of the FES stock was limited to $31,042, instead of $3,289,500.

The transactions described above are termed by the IRS as a "Son of BOSS" tax shelter. See Kligfeld, 2007 WL 1556083 at *4. The IRS issued an FPAA, with the main issue being Brandon Ridge Partners' calculation of the basis of the FES stock after the § 754 election. (Doc. No. 1, Ex. A). The IRS took the position that no adjustment to the basis of the FES stock was warranted, because Brandon Ridge, Inc.'s outside basis in the partnership did not exceed Brandon Ridge Partners' inside basis in its assets. (Doc. No. 1, Ex. A). As such, the IRS contended that the basis of the FES stock was zero. (Doc. No. 1, Ex. A). Accordingly, the IRS took the position that Brandon Ridge Partners' long-term capital gain that resulted from the sale of the FES stock was understated by over $3 million dollars due to the incorrect increase in the basis of the FES stock after the § 754 election. (Doc. No. 1, Ex. A). In response to the FPAA, Brandon Ridge Partners filed the instant lawsuit.

## III.  Motion for Summary Judgment

For purposes of its motion for summary judgment, Brandon Ridge Partners ("the Partnership") assumes that the IRS's adjustment of the basis of the FES stock to zero is correct. However, the Partnership argues that it is entitled to summary judgment because the FPAA and adjustments therein are time-barred by the applicable three year limitations period.[6]

Pursuant to 26 U.S.C. § 6501(a), the IRS has three years after the partner's individual tax return is filed to assess a tax on the partner. The three year limitations period is extended to six years if the partner "omits from gross income an amount properly includible therein which is in

_____

[6]The Court notes that 26 U.S.C. § 6229 and 26 U.S.C. § 6501 "provide alternative periods within which to assess tax with respect to partnership items, with the later expiring period governing in a particular case." G-5 Investment Partnership v. C.I.R., 2007 WL 1556280, at *3 (U.S. Tax Ct. May 30, 2007)(citations omitted).

excess of 25 percent of the amount of gross income stated in the return.  26 U.S.C. §

6501(e)(1)(A).  However, "[i]n determining the amount omitted from gross income, there shall

not be taken into account any amount which is omitted from gross income stated in the return if

such amount is disclosed in the return, or in a statement attached to the return, in a manner

adequate to apprise the Secretary of the nature and amount of such item."  26 U.S.C.

§ 6501(e)(1)(A)(ii).

The Partnership moves for summary judgment, arguing that the extended six year

limitations period is not applicable, because: (1) there was no omission of any amount from

gross income; and (2) even if there was such an omission, the gross income from the sale of the

FES stock was adequately disclosed.[7]  Accordingly, the Court will address each argument.

### A.  Omission of Gross Income

On its tax return, the Partnership reported the following information regarding the sale of

the FES stock: (1) the sales price was $3,315,000; (2) the purported basis of the FES stock was

$3,283,958; and (3) the gain on the sale totaled $31,042.  (Doc. No. 23, p. 41).  The Partnership

argues that there was no omission from gross income relating to the sale of the FES stock,

because the Partnership reported the total gross receipts from the sale of the FES stock.  Instead,

the Partnership argues, the Partnership merely overstated the basis of the FES stock, which is not

the same as omitting an amount from gross income.  In support of this argument, the Partnership

cites Colony v. C.I.R., 357 U.S. 28 (1958), Bakersfield Energy Partners, LP v. C.I.R., 2007 WL

---

[7]While the FPAA was issued more than six years after the return was filed, the
Partnership is not challenging, at this time, the timeliness of the FPAA if the six year limitations
period applies, because the Partnership assumes for the purposes of this motion that the six year
period was tolled, pursuant to 26 U.S.C. § 7609(e)(2), due to a summons being issued to Jenkins
& Gilchrist after the three year limitations period had expired.  (Doc. No. 21, n. 33).

1712543 (U.S. Tax Ct. June 14, 2007), and <u>Grapevine Imports, Ltd. v. U.S.</u>, 2007 WL 2049394 (U.S. Tax Ct. July 17, 2007).

In <u>Colony</u>, the issue before the Court was whether the assessments by the IRS were barred by the statute of limitations under the prior version of the Internal Revenue Code ("Code"). <u>See</u> <u>Colony</u>, 357 U.S. at 29. Section 275 of the prior version of the Code[8] provided an extended limitations period when the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return. <u>See</u> <u>id.</u>

The IRS had assessed deficiencies based on the IRS's "determination that the taxpayer had understated the gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the 'basis' of such lots by erroneously including in their cost certain unallowable items of development expense." <u>Id.</u> at 30. In order to determine whether the extended limitations period applied, the Court had to determine what the phrase "omits from gross income an amount properly includible therein" meant. <u>See</u> <u>id.</u> at 32. The taxpayer argued, and the Court agreed, "that the statute [was] limited to situations in which specific receipts or accruals of income items are left out of the computation of gross income," and it did not apply more generally to errors in computing gross income arising from other causes, such as situations where gross income was understated due to an overstatement of basis. <u>Id.</u> at 33.

In reaching this conclusion, the Court focused on the word "omit" used in the statute. <u>See</u> <u>id.</u> at 32. The Court noted that when Congress chose the phrase "omits from gross income," Congress meant to convey that the statute applied when specific receipts or income items are left

_____

[8]Section 275 of the prior version of the Code is the predecessor to § 6501(e).

out; otherwise, Congress could have chosen the phrase "understates gross income."  See id.

Since the taxpayer had accurately reported its gross receipts, and its gross income was merely

understated due to an overstatement of basis, the Court found that the extended limitations

period did not apply.  See id. at 30, 38.

In Bakersfield Energy Partners ("BEP"), an FPAA was sent to the partnership, BEP,

based on the IRS determining that BEP had overstated its basis in certain oil and gas property it

had sold.  See BEP, 2007 WL 1712543, at *1.  Prior to April 1, 1998, BEP owned an interest in

an oil and gas property with an unrelated company.  See id.  After a proposed sale of the oil and

gas property to another unrelated entity fell through, the petitioning partners decided to

restructure the ownership of BEP.  See id.  Therefore, on April 1, 1998, the petitioning partners

sold their partnership interests in BEP to Bakersfield Resources, LLC ("BRLLC"), an entity that

had been formed by the petitioning partners.  See id.  BEP made an election under § 754 to

adjust the inside basis of the partnership assets to equal BRLLC's outside basis in its newly

acquired BEP partnership interest, pursuant to § 743(b).  See id.  After the restructuring of BEP's

partnership interests, BEP sold the oil and gas property.

Thereafter, the IRS issued an FPAA, which stated: "[BEP] has failed to establish that it

had a basis greater than $0 in the gas reserves it sold during the taxable year 1998.  It has been

determined that any optional basis adjustment under section 743(b) was the result of a sham

transaction, a transaction lacking economic substance that had no business purpose and no

economic effect and/or was availed for tax avoidance purpose and should not be respected for

tax purposes."  Id. at *3.  In response, the petitioners filed suit, arguing that the FPAA was

barred by the three year limitations period.  See id.  The petitioners argued that an overstatement

of basis is not an omission from gross income for purposes of the extended period of limitations under § 6501(e)(1)(A).  <u>See</u> <u>id.</u>

In determining whether the extended six year limitations period applied, the tax court analyzed the <u>Colony</u> decision.  <u>See</u> <u>id.</u> at *5.  The tax court stated: "The precise holding of the Supreme Court in [<u>Colony</u>] was that the extended period of limitations applies to situations where specific income receipts have been 'left out' in the computation of gross income and not when an understatement of gross income resulted from an overstatement of basis."  <u>Id.</u>  The tax court found that <u>Colony</u>'s holding applied to BEP, and as a result, the tax court found that the extended six year limitations period did not apply.  <u>See</u> <u>id.</u> at *7.

Likewise, in <u>Grapevine Imports</u>, the tax court, citing <u>Colony</u> and <u>BEP</u>, found that <u>Colony</u>'s interpretation of the word omit in § 275 as meaning completely leaving out an item of income should be applied when reading § 6501(e)(1)(A).  Thus, based on <u>Colony</u>, <u>BEP</u>, and <u>Grapevine</u>, the Partnership in the instant case argues that the extended six year limitations period does not apply, because the understatement of gross income relating to the sale of the FES stock is not equivalent to an omission from gross income that would trigger the extended limitations period.  In response, the IRS argues that <u>Colony</u> does not apply to the instant case due to the change in the Code.[9]

Specifically, the IRS points out that § 6501 contains the following provision regarding gross income: "In the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to

---

[9]The IRS did not address the <u>BEP</u> or <u>Grapevine</u> cases, because those cases were issued after the IRS filed its reply brief.  Those cases were cited by the Partnership when it filed its two Notices of Supplemental Authority.  (Doc. No. 44, 45).

be shown on the return) prior to diminution by the cost of such sales or services."  26 U.S.C. §

6501(e)(1)(A)(i).  The IRS argues that <u>Colony</u>'s gross receipts test only applies to situations

described in § 6501(e)(1)(A)(i), which applies to trade or business sales of goods or services.  To

conclude otherwise would render § 6501(e)(1)(A)(i) superfluous.  Since the transaction at issue

in the instant case is the Partnership's sale of the FES stock, which is not a business sale of

goods or services, the IRS argues that the gross receipts test does not apply.  There is case law

that supports the IRS's position.

> For example, in <u>Schneider v. C.I.R.</u>, the tax court stated:

> In applying section 275(c) [of the 1939 Code], a conflict arose over what was
> meant by the term gross income when dealing with trade or business gross
> income. The courts had to choose between using 'gross receipts' or 'gross
> profits.' . . . When adopting the 1954 Code, Congress cleared up the controversy
> by enacting section 6501(e)(1)(A)(i) . . ..
>
> *        *        *
>
> After examining the unambiguous language of the 1954 statute and the legislative
> history, we are convinced that Congress was simply changing for section 6501(e)
> purposes the definition of trade or business gross income from the generally
> accepted definition that 'gross income' means the total sales, less the cost of the
> goods sold.  Thus, it is only for the purpose of calculating trade or business gross
> income under section 6501(e) that the 'gross receipts' method is utilized in
> determining gross income.

<u>Schneider v. C.I.R.</u>, 1985 WL 14754 (U.S. Tax Ct. 1985)(internal citations omitted).  Likewise,

in <u>Insulglass Corp. v. C.I.R.</u>, the tax court stated:

> [S]ection 6501(e)(1)(A)(i) provides an exception - in the case of a trade or
> business - to the general meaning of 'gross income' as stated in section 6501(e).
> In the case of a trade or business, 'gross income' is equated with gross receipts.
> Otherwise, 'gross income' means those items listed in section 61(a) . . ..

<u>Insulglass Corp. v. C.I.R.</u>, 84 T.C. 203, 210 (U.S. Tax Ct. 1985); <u>see</u> <u>also</u> <u>Northern Indiana</u>

<u>Public Service Co. v. C.I.R.</u>, 101 T.C. 294, 300 n.7 (U.S. Tax Ct. 1993)(stating that "[f]or

nonbusiness items and those not covered under sec. 6501(e)(1)(A)(i), the general definition of

12

gross income found in the Code applies"); <u>Benson v. C.I.R.</u>, 2006 WL 770577, at *2 (U.S. Tax Ct. March 27, 2006).

Furthermore, there are Fifth Circuit cases that are binding on this Court that state that an item of income is omitted if the item is not shown in a manner sufficient to enable the IRS, upon reasonable inspection, to detect the error.  <u>See</u> <u>Taylor v. U.S.</u>, 417 F.2d 991, 993 (5th Cir. 1969)(citing <u>Phinney v. Chambers</u>, 392 F.2d 680, 685 (5th Cir. 1968)).  As explained in the next section, the Court finds that the gain on the sale of the FES stock was not shown in a manner sufficient to enable the IRS, upon reasonable inspection, to detect that it had been calculated incorrectly due to an overstatement in the basis of the stock, which led to an understatement of gross income by over $3 million.

Finally, in further support that the phrase "omits from gross income an amount properly includible therein" encompasses not only situations where an item of income is completely left out, but also situations where the amount of gross income is understated due to an error in the calculation, the Court points to § 6501(e)(2) regarding estate and gift taxes.  Section 6501(e)(2) provides a six year limitation period when a "taxpayer omits . . . items includible in [the] gross estate or [the] total gifts."  Congress specifically used the word "item" in § 6501(e)(2) when describing the omission, rather than the word "amount" as used in § 6501(e)(1).  This suggests that the extended limitations period in § 6501(e)(2) regarding estate and gift taxes only applies when an item is completely left out, while the extended limitations period in § 6501(e)(1) regarding income taxes applies both in cases where an item of income is completely left out and in situations where the amount of gross income reported is understated due to an error in the calculation.

Based on the above, the Court finds that there was an omission from gross income of more than $3 million that was properly includible and which is in excess of 25 percent of the amount of gross income stated in the return.  As such, the six year limitation period applies, unless the gain on the sale of the FES stock was adequately disclosed.

**B.  Adequate Disclosure**

Next, the Partnership argues that the six year limitations period does not apply, because the gross income from the sale of the FES stock was adequately disclosed.  As previously stated, § 6501(e)(1)(A)(ii) provides: "In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item."

**1.  Which Returns Are Considered**

The first issue before the Court is what return does the Court look at when determining whether there was adequate disclosure.  The Partnership contends that the Court looks at the Jeffersons' Form 1040 Individual Tax Return, along with the Partnership's Form 1065 Return and Brandon Ridge, Inc.'s Form 1120S.  The Partnership cites various cases in support of its position.

In response, the IRS argues that the Court can only look at the Jeffersons' Form 1040 Individual Tax Return when determining whether there was adequate disclosure under § 6501(e)(1)(A)(ii).  The IRS bases this argument on the language of § 6501(a), which provides, in relevant part: "For purposes of this chapter, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has

14

received an item of income, gain, loss, deduction, or credit)."  This provision was added to §

6501 in 1997 and applies to taxable years that begin after the date the provision was added.  The

IRS points out that the cases the Partnership relies on deal with pre-1998 tax years, and as such,

they do not address the effect of this provision and its definition of a "return."

      The parties have not cited, and the Court has not found, a case dealing with this issue.

While the language of the statute does provide that the term, "return," refers to the return

required to be filed by the taxpayer, the Court is not persuaded that the Partnership's Form 1065

Return and Brandon Ridge, Inc.'s Form 1120S are not relevant to the issue of whether there was

adequate disclosure in this case.  The case law regarding tax years prior to 1998 provides that if

the taxpayer's individual return contains references to a pass-through entity, such as a

partnership or S-corporation, the returns of the pass-through entity should be considered together

with the taxpayer's individual return.  See Benson, 2006 WL 770577, at *3 (citations omitted);

Estate of Klein v. C.I.R., 537 F.2d 701, 705 (2d Cir. 1976).  The Court finds that this case law

can be reconciled with the 1997 amendment to § 6501(a): Under § 6501(a), a court only looks at

the taxpayer's return unless there are references to income in that return from a pass-through

entity, in which case, the returns from the pass-through entity can also be considered.

      In the instant case, the Jeffersons' individual tax return lists Brandon Ridge Partners and

Brandon Ridge, Inc. under a section titled, "Income or Loss from Partnerships and S

Corporations."  (Doc. No. 24, p. 11, 24).  Furthermore, given that this case involves a review of a

partnership item, it makes sense that the Partnership's tax return should be considered.

Accordingly, the Court will consider the Jeffersons' individual tax return, along with the returns

of Brandon Ridge Partners and Brandon Ridge, Inc.

## 2.  Information Disclosed in the Returns

The following information is disclosed in the Jeffersons' individual tax return (Doc. No. 24, p. 1-26): Schedule D indicates that the Jeffersons had a $31,042 net long-term capital gain from a partnership, S corporation, estate, and/or trust.  Schedule E indicates that the Jeffersons had partnership interests in Brandon Ridge Partners and interests in two S-corporations, FES and Brandon Ridge, Inc.  Additionally, the Jeffersons attached statements to their tax return regarding their transfer of their "Partnership Interest" to Brandon Ridge, Inc. On December 3, 1998, as required by 26 C.F.R. 1.351-3(a).  The "Partnership Interest" referred to was their transfer of their 99% interest in Brandon Ridge Partners to Brandon Ridge, Inc., but such specificity was not given in the statements.  Instead, they simply indicate that Mr. Jefferson transferred a partnership interest with an adjusted basis of $3,251,117 to Brandon Ridge, Inc. and that Mrs. Jefferson transferred a partnership interest with an adjusted basis of $32,840 to Brandon Ridge, Inc.[10]

The following information is disclosed on Brandon Ridge Partners' tax return (Doc. No. 23, p. 35-48): Schedule K indicates that the Partnership had a net long-term capital gain of $31,042.  Schedule M indicates that $3,283,957 was contributed as capital to the Partnership during the tax year.  The Schedule K-1's indicate that the capital contribution was made up of $3,250,786 from Brandon Ridge, Inc. and $33,171 from Mr. Jefferson.

Schedule D of the Partnership return discloses the sale of the FES stock.  Specifically, it indicates that the FES stock was acquired on various dates and was sold on December 4, 1998 for a sales price of $3,315,000.  It further indicates that the FES stock had a basis of $3,283,958,

---

[10]A similar statement was attached to Brandon Ridge, Inc.'s tax return.

which led to a long-term capital gain of $31,042.

Attached to the Partnership return is a statement regarding the technical termination of the Partnership on December 2, 1998 due to Mr. Jefferson transferring his 98% interest and Mrs. Jefferson transferring her 1% interest in the Partnership to Brandon Ridge, Inc.  Additionally, the § 754 election is attached to the Partnership return, which states that the Partnership elects to adjust the basis of partnership property as provided by § 734(b) and 743(b).

The following information is disclosed on Brandon Ridge, Inc.'s tax return (Doc. No. 24, p. 27-41): Attached to the tax return is a statement regarding the § 743(b) adjustment to Brandon Ridge Partners' property.  Specifically, the statement provides that the basis of Brandon Ridge Partners' "Investment Assets" was being increased by $3,258,458.  The statement does not, however, indicate which specific investment assets were getting an increased basis.

### 3.  Whether There Was Adequate Disclosure

Section 6501(e)(1)(A)(ii) provides that an amount is not omitted if the "amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item."  In the instant case, the nature of the amount omitted (i.e., long-term capital gain) was disclosed.  However, the parties disagree as to whether the amount was adequately disclosed.

The adequate disclosure test of § 6501(e) has been described differently by different courts.  Some courts interpret the test as being whether the return provides a "clue" as to the omitted item.  See Benderoff v. U.S., 398 F.2d 132, 136 (8th Cir. 1968).  Other courts interpret adequate disclosure to be more than "simply a clue which would be sufficient to intrigue a Sherlock Holmes," but less than "a detailed revelation of each and every underlying fact."

17

George Edward Quick Trust v. C.I.R., 54 T.C. 1336, 1347 (U.S. Tax Ct. 1970)(internal quotation marks omitted).  There are still other variations of the meaning of adequate disclosure.

Cases from the former Fifth Circuit, which are binding on this Court, have described the test as being: If an item of income is not shown on the face of the return or an attached statement "in a manner sufficient to enable the [IRS] by reasonable inspection of the return to detect the errors," then the item is not adequately disclosed.  Phinney, 392 F.2d at 685; see also Taylor, 417 F.2d at 993.  Furthermore, the former Fifth Circuit has explained that in such a situation, an extended limitations period is warranted in order for the IRS "not to be penalized by a taxpayer's failure to reveal the facts," because the IRS "cannot be required to act promptly on information that is not known to it."  Taylor, 417 F.2d at 993.  Thus, the adequate disclosure provision of § 6501 "has to be read in light of its purpose, namely, to give the taxpayer the shorter limitations period where the taxpayer omitted a particular income item from its calculations but disclosed it in substance."  CC&F Western Operations Limited Partnership v. C.I.R., 273 F.3d 402, 408 (1st Cir. 2001); see also Estate of William Fry v. C.I.R., 88 T.C. 1020, 1023 (U.S. Tax Ct. 1987)(stating that in order for there to be adequate disclosure, "[t]he statement must be sufficiently detailed to alert the [IRS] as to the nature of the transaction so that the decision as to whether to select the return for audit may be a reasonably informed one"); CC&F Western Operations Limited Partnership v. C.I.R., 2000 WL 1276708, at *4 (U.S. Tax Ct. Sept. 8, 2000)(stating that the test is "whether the need for an adjustment is 'reasonably' apparent from the face of the . . . tax return").

In the instant case, the tax returns indicate a relationship between the Jeffersons, the Partnership, and Brandon Ridge, Inc.  Read together, the returns show that the Jeffersons

transferred their 99% interest in the Partnership to Brandon Ridge, Inc. and that the purported

total basis of interests transferred was $3,283,957.  They also show that a § 754 election was

made and that the Partnership's basis in unspecified investment assets was increased by

$3,258,458.  Additionally, they show the sales price of the FES stock and the purported basis of

the FES stock.  However, what is not disclosed in any of the returns is the fact that the proceeds

of the short sale, *along with the obligation to cover the short sale*, was contributed to the

Partnership, and the Jeffersons did not reduce their basis in the Partnership by the value of the

obligation to cover the short sale that was assumed by the Partnership.  Additionally, the returns

do not disclose that the basis of the FES stock was increased by $3,258,458.33 or that the FES

stock was the only "Investment Asset" held by the Partnership.

In order to adequately disclose the gain on the sale of the FES stock, information

regarding the contribution of the obligation to cover the short sale and its effect on the basis of

the Jeffersons' interest in the Partnership (which was later transferred to Brandon Ridge, Inc.)

was necessary so that the IRS could detect the error in the calculation of the net long-term capital

gain on the sale of the FES stock.  As presented in the returns and statements attached thereto,

the substance of the transactions relating to the sale of the FES stock (which included the

contribution to the Partnership of the obligation to cover the short sale of the Treasury Notes and

the effect on the Jefferson's basis in the Partnership) was not disclosed in a manner that was

adequate to apprise the IRS of the true amount of capital gain that resulted from the sale of the

FES stock.[11]  See, e.g., Benson, 2006 WL 770577; In re G-I Holdings, Inc., 2006 WL 2595264

---

[11]The Court is not persuaded by the Partnership's references to IRS agent Kenneth
Leblanc's deposition testimony.  (Doc. No. 22).  Leblanc was assigned the Partnership's case in
2006 after the Partnership was suspected of participating in a Son of BOSS tax shelter based on

(D. N.J. Sept. 8, 2006).

The lack of adequate disclosure in the instant case is similar to that which occurred in CC&F Western Operations Limited Partnership v. C.I.R.  In CC&F Western, an FPAA was issued to a partnership, Western, whose sole activity was selling its interests in other partnerships to a third-party.  See CC&F Western, 2000 WL 1276708, at *1.  The agreement between Western and the third-party purchaser required that the underlying property of each partnership be free and clear of all debt at closing, and as such, a portion of the sales proceeds was used to pay off all of the debt at the closing.  See id.  In its tax return, Western incorrectly reported a loss on the sale of the twelve partnership interests, rather than the gain that actually occurred.  See id.

In the partnership returns of the partnerships that Western conveyed, all but one included a statement that the partnerships terminated under § 708 when Western sold its entire interests in the partnerships to the purchaser.  See id. at *1-2.  Additionally, they each attached a schedule K-1 for each of its partners, and the K-1's for Western showed that the aggregate amount of debt from the partnerships for which Western was liable totaled $69,959,490.  See id. at *2.

---

records from Jenkins & Gilchrist.  (Doc. No. 22, depo. p. 14, 15, 29, 78, 110-12).  As such, his testimony that certain disclosures would raise an issue must be taken in context, which is that he reviewed the returns based on the premise that the Partnership may have participated in a Son of BOSS tax shelter, which he describes as transactions causing an artificially inflated basis that generate a loss or small gain.  (Doc. No. 22, depo. p. 110-11, 143-48).

Furthermore, the Court is not persuaded by the argument that it is obvious that the "Investment Asset" being increased by $3,258,458 (referred to in Brandon Ridge, Inc.'s return) was the FES stock.  The Partnership appears to base this on Leblanc's testimony.  However, the Partnership mis-characterizes his testimony.  Leblanc testified that based on the Partnership's return, the only investment asset that was disclosed was the FES stock; he did not state that the return showed that the Partnership's only investment asset was the FES stock.  (Doc. No. 22, depo. p. 118-20).

However, neither Western's return nor the returns of the partnerships that were conveyed disclosed that the purchaser paid or assumed Western's liabilities for the partnerships.  See id.

In response to the FPAA relating to Western's understating the gain on the sale of its interests in the twelve partnerships, Western argued that it adequately disclosed the amount it realized on the sale of the interests in the partnerships, because the K-1's indicated that at the time of the sale Western was liable for $69,959,490 of combined debt of the partnerships. See id. at *4.  Thus, Western argued that since the assumption of debt by the purchaser should have been included in the amount Western realized, the IRS should have been on notice that the actual amount realized might be equal to or greater than the amount of debt Western was liable for prior to the sale.  See id.  Therefore, Western argued that the IRS was on notice that Western's reporting that it realized only $27,965,551 was understated.  See id.

The court rejected Western's argument that the IRS was on notice of the understatement because the IRS could have sorted through all of the K-1's, added up all of the liabilities allocated to Western on the K-1's, and then compared the amount of liabilities disclosed with the amount Western reported as being realized from the sale and determined that the reported amount realized was understated.  See id.  Instead, the court found that Western failed to provide enough information to allow the IRS to reasonably identify the under-reporting of the gain.  See id, at *5.

Likewise, in the instant case, the tax returns and statements attached thereto failed to provide enough information to allow the IRS to reasonably identify the under-reporting of the gain on the sale of the FES stock. This Court's finding that there was not adequate disclosure of the gain on the sale of the FES stock does not imply that the Partnership, Jeffersons, and

21

Brandon Ridge, Inc. were required to abandon their claim that the basis of the FES stock was $3,283,958 when reporting it on the Partnership return.  Instead, the Partnership could have reported $3,283,958 as the basis of the FES stock and adequately disclosed the gain on the sale of the FES stock if the transactions that led to the increase in the basis of the FES stock had been disclosed.  Thus, because the transactions that supported the Jeffersons' calculation of the their basis in their interests in the Partnership–a basis which was carried over to Brandon Ridge, Inc.–was not disclosed, the need for an adjustment to the gain reported on the sale of the FES stock was not reasonably apparent from the face of the returns and statements attached thereto.

Therefore, if the returns had disclosed that the Partnership assumed the obligation to cover the short sale and also disclosed that the Jeffersons took the position that the assumption did not reduce their basis in their interests in the Partnership, then the IRS would have had enough information to be adequately apprised of the true amount of the gain on the sale of the FES stock.  If such information had been disclosed, the IRS would have been on notice that the basis of the Partnership interest conveyed to Brandon Ridge, Inc. was overstated, and as such, the IRS would have been on notice that it should scrutinize the reported adjustment to unspecified "Investment Assets," which included the FES stock, due to the § 754 election.

Therefore, the Court finds that the returns and statements attached thereto failed to adequately apprise the IRS of the true amount of gain on the sale of the FES stock.  As such, the Partnership has not shown that the extended limitations period does not apply.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Brandon Ridge Partners' Motion for Summary Judgment (Doc. No. 21) is

**DENIED**;

(2)     Brandon Ridge Partners' Request for Oral Argument (Doc. No. 29) is **DENIED**;

and

(3)     The United States' Motion for Leave to Submit Supplemental Briefing (Doc. No.

46) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of July, 2007.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge